Please all rise. It is an honor to be able to hear you. It is an honor to hold the appellate court for the 2nd Judicial District. It is now time for the session pursuant to adjournment. If you will excuse me. Please be seated. Good morning and please be seated. Your Honor, this case will be adopted. Excuse me, Judge, 17-015. This is a case of Northern Illinois Incorporated, in which an appellate is the appellee. The accelerated entertainment team, the LISC, the Illinois Gaming Board, and also the defendants' appellates. Pardon me while we have the defendants' appellates. This is John P. Schiff. Pardon me while we have the defendant's appellate. This is Jeffrey H. Howard. Good morning, Counsel. Let me ask first, the Gaming Board has filed a motion for leave to cite additional authority. Is there any objection to that particular motion? No, Your Honor. All right, then that motion will be granted. All right, Mr. Schmidt, you may proceed. Thank you, Your Honor, and may it please the Court and Counsel, my name is John Schmidt and I'm an assistant attorney general. Pull that up just a bit so that it's a little higher and you don't have to bend into it. Oh. There you go. Thank you, Your Honor. Thank you. My name is John Schmidt and I'm an assistant attorney general. I represent the Gaming Board. and its members, and we ask for reversal of the circuit court's order that voided the Gaming Board's economic disassociation order. And the reason we ask for that is basically family amusement's failure to exhaust administrative remedies. Your Honor's asked us to address a question at this argument, and the question is basically, assuming arguendo that the circuit court did have jurisdiction to consider the Gaming Board's statutory authority to promulgate Rule 330 and to issue disassociation orders affecting sales agent. Did the court also have jurisdiction to consider the remainder of Count 5 seeking judicial review of this specific disassociation order? And our answer to that is no. And we think a case that is very relevant is something that our opponent cited, and that's the Office of the Lake County State's Attorney's case. Now that was a case in which this court found that the circuit court did have jurisdiction to consider a complaint by the Lake County State's Attorney saying that the Illinois Human Rights Commission, I'm sorry, did not have authority to consider an employee discrimination claim brought by an Assistant State's Attorney because that was not an employer-employee relationship. The court emphasized that the complaint solely went to the Commission's statutory authority, and it emphasized that the State's Attorney was not, in that case, asking for review of any commission order, and it was not trying to circumvent the requirements of the Human Rights Act in any way. We think this case is different because family amusement was asking, and we think the circuit court did extend beyond looking at the board's statutory authority and was actually reviewing the merits of the board's decision, and that's something that should not be done until all administrative remedies have been exhausted. And arguably, even if the board's order went beyond the gaming contract, the board should consider that an administrative review nevertheless. Yes. Not the court in the first instance. Yes, that's our position, Your Honor, and one reason for that, I think an important reason for that, is the rule of exhausting administrative remedies sometimes serves to conserve judicial resources. Sometimes the judiciary need not get involved if administrative remedies are exhausted, and here our position is that Mr. Graff and family amusements have the right to a hearing before the gaming board. In fact, they've wisely, to protect their rights, they've asked for the hearing before the gaming board. They asked for the hearing and then they moved for a stay. They did, yes. And so on that topic, what's the status of the criminal charges right now? The criminal charges remain pending, Your Honor, as far as I know. I checked with the gaming board very recently. I don't have counsel have any different information. My understanding is they are still pending. But that's one reason for requiring exhaustion. The judiciary might not need to become involved at all. Well, didn't the court have some problems, in fact, trying to decide what to do with the actual order, having declared it void in that, well, what, should we strike this part of it? Should we strike this part of it? You know, wasn't there some issues that could have been resolved if it had gone to gaming board administrative relief? Yes, and there is every chance that they could have been resolved. That's correct, Your Honor. The court wasn't, you know, what the court decided was that the one line from the order was void. And the court said, well, I'm not going to rewrite the gaming board's order for it. But our point is the gaming board itself may have rewritten the order and may have granted at least some of the relief sought by family amusement and Mr. Graham, possibly all of that. And we feel that that's the course that should have been taken here. And another important reason for requiring exhaustion is the legislature and the gaming board's regulations provide that generally these matters are, you know, to be resolved by the agency in the first instance. And then, you know, there is an avenue within the agency for complaining parties to seek relief. And that recognizing exhaustion of the situation allows the agency to utilize its expertise and to make the fact findings. That doesn't mean the circuit court can never become involved. Of course it can. And in this case, circuit courts can become involved on administrative review of the gaming board's, but only of the gaming board's final decision. And that would be after a fully developed record by the gaming board, correct? That's correct. That's correct, Your Honor. And that is, I think, another reason to require exhaustion, that generally in administrative review, in matters that are committed to an administrative agency, it's the agency that is supposed to develop the facts and develop the record. It's supposed to be developed before the agency. And the circuit court more or less acts more as a court of review, more like an appellate court. It generally gives some deference to the agency's decision. But, you know, Mr. Graf and Family Amusement have certainly raised some serious concerns regarding the economic disassociation order. And if a circuit court felt that the final order of the gaming board resulted in a deprivation of constitutional rights, the circuit court would certainly, that's one area in which administrative agencies don't get discretion. As told by the Constitution, that's where the courts have the expertise. And when a disassociation order is sent, what's the actual trigger? Or what was the trigger in this case? Was it just the fact that they found out that Mr. Graf had a charge and that they had a file? I mean, those were two issues that, you know, Excel is out there receiving services from Family Amusement. Mr. Graf is the sole shareholder of Family Amusement. So if he has a problem, is that what triggered it? That's what triggered it, Your Honor. And do they do any additional research at that point other than they see this charge? I think in this case, well, the gaming board itself, it was gaming board investigators who went and seized. They had the facts. So the facts would have come beforehand. But in some instances, yes. In some instances, the way it might work is a licensed terminal operator like Excel would be required to report certain information about its sales agents. So in a situation like this, Excel might have reported the information, and then the gaming board would investigate. But because this more or less was gaming board personnel investigating, it occurred differently this time. The Family Amusement has, of course, challenged the board's authority to enter this type of disassociation order against sales agents. And it is true, as they point out, that sales agents really aren't mentioned in the Video Gaming Act. One reason for that is the legislature's experience at the time it passed the Video Gaming Act would have been more with riverboat gambling. And riverboat gambling involves a much more limited number of sites and locations. So you don't really have sales agents in riverboat gambling. But when video gaming was authorized, the practice of using sales agents became very prevalent. And eventually the board determined, well, the board still does not license them. But the board decided, well, at least we should require the licensees to provide some information about their sales agents. And if there's some serious problem relating to character, integrity, and so forth, then we should be able to order economic disassociation in order to preserve public confidence in gaming. So that's the genesis of Rule 330? It would be, Your Honor, yes. And this is another reason, I think, to require exhaustion is this is a matter in which the agency's expertise would be relevant. The agency, of course, has expertise in matters that are related to gaming. And one of them would be matters that might affect public confidence. And at least in the first instance, the gaming board itself should have the authority to hear these matters and to consider the interests of video gaming, in which, as experts, they might have more expertise than the courts. But, of course, that will later on potentially be subject to court review. And certainly, again, if family amusement was dissatisfied with the gaming board's ultimate order that was unconstitutional, which seems to be the thrust of their argument, certainly they could get reviewed by the circuit court and then even by the – they could have review in the courts. And so the J&J case, J&J Ventures case that we cited, that was an example of courts, the Illinois Supreme Court, really recognized that the gaming board, has very broad authority with regard to gaming matters and that having that broad authority is important in the process of assuring confidence in legalized gambling. We've cited – we understand that Mr. Graff has only been arrested and is not convicted. And please excuse me for a second. I'm having a bit of a cold. We do understand that. But even an arrest in a matter like this is something that at least has the potential to have an impact on public confidence in gaming. And we cited one case in our brief out of the Illinois Supreme Court, Phillips v. Graham, where an arrest was enough to justify exclusion of somebody from the horse racing industry. Granted, that was an arrest for murder, which is very serious. It's a more serious offense than alleged possession of video gaming devices. But they still found that it undermined the public confidence. Yes. Yeah. And the offense charged here is directly related to video gaming. And I'll stop. Let me ask myself a question. I know you're – when the Supreme Court bell goes off, you stop. But I have a question. Sure. So even when there is a challenge to the jurisdiction of the gaming board to enter – to enter such an order against a sales agent, you're still saying that should be done not by a trial court but by the gaming board? Not quite, Your Honor. And my opening brief may have sounded like that. But I think it's – I think the circuit court would have authority, jurisdiction to consider the gaming board's statutory authority, to consider whether it was acting outside its statutory authority. Well, when you say that the trial court erred in denying your motion to dismiss, that seems to be rather global, that the trial court should have stayed out of the process, period. You know, that's correct, Your Honor. And I think a better way of looking at it is they should have only stayed in to the extent they were ruling on the gaming board's statutory authority. And I think – Beyond that, they should have stopped. Your opening comments alluded to that. Right. Responding to the question that was proposed. That's right, Your Honor. That's correct. Thank you. Thank you, Your Honor. You'll have an opportunity for response or report. Thank you, Your Honor. All right, Mr. Powell. Good morning, Your Honor. May it please the Court, I'm Jeff Powell. I represent the Appellee's Family Renewsment of Northern Illinois Gaming and Richard Graff – I'm sorry. Thank you. I think the best way to look at this case is to kind of break it into our four arguments because I think there are jurisdictional issues that we can talk about with each of them. And I think as you indicated in talking to Appellant's counsel, there might be some that you may find that fall within the court's jurisdiction, some that may not. Our first argument is that Rule 330, as promulgated, as it applies to sales agents pursuant to Rule 222d-2, exceeded the authority of the gaming board. Did the statute need to specifically say sales agent in order to include the sales agent in Rule 330, the disassociation? I don't know if it needed to say it specifically, but what it does say is there are six different kinds of licensees that are set forth in the statute. Anyone who touches a video gaming terminal has to have a license, or if they have it on their premises, they have to have a license. The legislature was very clear about what gaming was and who was involved and what they thought the people were that needed to be regulated. Sales agents were not one of those people, and they weren't one of those people for several years until the beginning of 2016, they amended Regulation 330 to include sales agents pursuant to Rule 222d-2. And note that the Riverboat Gaming Act also has a similar provision, but only key individuals can be disassociated under that statute. It's our position that when you look at Rule 330, you have to look at it in terms of the enabling statute, which governs gaming. What is gaming? Gaming is all the things that the legislature took into account in drafting the legislation enabling statute. I think it's pretty clear that that portion of our argument was properly before the circuit court. You started out saying you had four areas. Are you talking about the four different areas that your client was receiving monies, like the referral contract, the promissory note, the ATM agreement, and the equipment? I'm sorry, Your Honor. No, I was talking about our four arguments. The first argument being that Rule 330 as a probable target is invalid. I'll run through them to give us the outlines. The second argument is that this disassociation order also violates the enabling statute. Violates? The enabling statute, the Video Gaming Act. The third argument, I think it's the fourth in our brief, but… Those arguments are related, though, aren't they? Well, the second argument has to assume that they did have the authority under Rule 330. So if they did have the authority, then this specific disassociation order, because it says without qualification there shall be no additional payments, did that exceed the authority of the enabling statute? And why is that not appropriate for administrative review? You could go to the Gaming Board and say your order exceeded your authority. Your Honor, because they… You have to start with the scope of the rule. You have to look at the enabling statute. What does it say? It says they can control gaming. They can make rules and regulations related to gaming. And so that is the extent of their authority. When you say no additional payments, you can make no additional payments, that includes payments unrelated to gaming. Now here, I think you can look at that. If you look at that argument, you can make that argument to the Gaming Board. So isn't this an attempted act, Your Honor, around administrative review? I disagree with that, Your Honor, because what we're not trying to say, what are the facts here? Was the arrest valid? Did they have gaming? All the things that would lead one to enter a disassociation order. We're saying this disassociation order wasn't a valid exercise of the Gaming Board's authority when they said no additional payments. And clearly when you're talking about the authority of the Board, it's subject to the court's review instead of having to exhaust. Go ahead with number three, argument number three. Number three is, and it's kind of related, which is… I'm sorry. I got lost for a second. Number three is, the way this disassociation order was entered specifically says no additional payments, prohibits any additional payments. Well, Rule 330A says that it's Excel's obligation to provide a means for the economic disassociation of any person that the licensee, the Excel, has an order to be dissociated from. By entering that order the way they did, they prevented Excel from complying with Rule 330A. So they have basically entered a rule or entered an order that violates their own rules. And the case that I would look to on that is Illinois Bell Telephone Outland. That's a First District case cited on a briefs where the administrative body was trying to impose a tax that by its own rules it couldn't do. The court said, no, no, you can't do that. And the same here, they're trying to impose an order that no one can abide by. I mean, here's the problem, Judge. Well, nobody has information to identify the problem with the order. And isn't that something that should be reconsidered? As Mr. Schmidt said, once that information is garnered, it's very probable that there would be a modification of that order. But this is an order that was entered, and you have 21 days to object towards the final order. And you did that. We did that, and we sought to stay. But the question here, Judge, is was this a valid exercise of their authority? Could we have gone through administrative review? We could. But that doesn't mean that the court didn't have jurisdiction to hear our arguments. We have a right to go into court when we're challenging the authority and exercising jurisdiction of the administrative body. And you did that. And you challenged the authority, and the trial court judge found that they did have the authority on the 330, right? He found that they, on our first argument, he agreed with us that, or he agreed with the IGB that they did have the authority. They did have authority. But he felt they exceeded that authority by doing what they did. You didn't exhaust all the administrative remedies with addressing the four areas I talked about earlier, whether it was the referral contract, the promissory note, the ATM agreement, and the equipment. Because as you argued down below, not all of those maybe were related to that contract, and therefore, they may have exceeded 330. So why is it that you get to forego the administrative remedy and go right to the trial court, and how is it that the trial court did not exceed its authority in addressing those issues? Those other, it's our position, those other contracts, the ATM agreement, the promissory note, the asset purchase agreement, and even payments for work we've already performed should not be stopped. We have a right to receive those. Where does, if we went through the administrative review process, where does the board have the authority to say what we get paid on contracts unrelated to gaming? Well, aren't they in a better position to make that determination in the trial court? I'm looking at the statute. I'm sorry, Your Honor. No, go ahead. Looking at the statute that says they have the right to control gaming, how does that give them the right to control a promissory note, an asset purchase agreement, or an ATM agreement? That falls outside the scope of their authority. Well, that's a good point. Then why not say to them, hey, pump the brakes? This is outside your scope of authority. You know, we think you can enter the 330 with respect to what is gaming, that you didn't do that. Your Honor, I don't believe we had to do that because these are issues that don't take, they don't take any specialized expertise of the gaming board to say, oh, you should get paid for your contracts. So you're saying those are outside the scope of the gaming contract, therefore they should go someplace else. Absolutely. I see no reason the board should have any authority over contracts that are unrelated to gaming. But the purpose of administrative review is to correct, if necessary, problems with orders or actions. And if the gaming board did not know that Family Amusements and Excel had contracts separate and apart from gaming, and it appears they did not, they should have an opportunity to correct that. Isn't that true? Your Honor, they've had a year and a half to correct it. Did they have a process? Did you bring it to them? You never brought that to them. It's our position. We didn't have to because what the case law says, if you're challenging the authority, you don't have to go to that administrative body and say, hey, did we exceed your authority? No, you didn't. You filed an answer to the gaming board's order and then saw it stay. We did because we had 21 days or else it became final. So you preserved your right to administrative review but then went to the court. Yes, we did, Your Honor. As is our right, I believe. What about the status of the criminal case? Why not focus Mr. Graf's energies on that case? I can tell you, Your Honor, I'm not the attorney of record on the criminal case. To my understanding, there is a motion up tomorrow to quash the indictment. I don't know how that will end up, but that's the status. I'm going to ask counsel about that. And shouldn't the gaming board make a determination as to whether or not your argument that these contracts are unrelated? That's just a statement. We don't know that. We don't have a record, a fully developed record. The trial court didn't have a fully developed record as to how the relationship that led to these other contracts was developed. I mean, there are all kinds of public policy issues that might be at stake as well as evidence that could be taken as to how these contracts developed. They could all be related to gaming. They could all be unrelated to gaming. Here's my position on that, Your Honor. When they said no additional payments, they took the risk they were going outside the bounds of the inhibited statute, and they did. And once they did that, we had the right to go to the circuit court and say, is this about exercise of the IGB's authority? Because what the case law says is you don't have to go to the administrative body and say, did you exercise your authority properly? Because the chances are they're going to say, yeah, we did. So that's the other side of the coin as far as whether we exhaust or not. It's our position that Rule 330 shouldn't be applied to sales agents. To the extent it has been applied to sales agents, the disassociation order in this case exceeded the authority when they said no additional payments without qualification. In addition to that, by saying no additional payments, they've made it impossible for Excel to comply with Rule 330A so that my clients could get paid the money that they're owed. Because I read 330A to say you have to wind up your business licensee when we disassociate one of your sales agents. But by entering the order the way they did, they prevented that from happening. And then our last argument, fourth argument, are the as-implied constitutional challenges. And I have to concede that there is some case law out there that says those should have properly been for an administrative review or, sorry, administrative body. That was not an argument that was raised below by the IGB. We asked that it be de-waived because what they actually did, not only did they take that argument, they actually argued each and every one of our constitutional claims at length. When I look at an administrative review and exhaustion of those remedies, I think of what is required for us to review certain things. If you don't ask for a stay in the trial court, but you come immediately to us to ask for a stay of a ruling, you had better have something other than the trial judge doesn't like me and he's not going to issue a ruling because we're going to deny it. You need to go through that process. If you have gone through that process and you can state in a record that there is good reason now for this court to consider it, we consider it. If you have a trial or if you have some action and you don't bring a motion to reconsider so that the trial court can correct a problem, but you bring it directly to us, we probably will say you didn't give them a chance to correct it and we'll send it back anyway, delaying your proceedings. And it looks like what you wanted to prevent here was delaying proceedings. But, in fact, you asked for a stay and didn't go forward there when you could have. So how have you prevented delay? Your Honor, we don't think it's appropriate for the IGB to be ruling on its own authority. We have the right to go to the circuit court and ask for relief from the circuit court so that we don't have to have that fight with the IGB. We sought out a TRO at the beginning of the case. We really tried to fasten it. It was denied. It was denied. There are a number of cases, Supreme Court cases, such as the Landfill Inc. v. Pollution Control Board, even the Knox case cited by counsel, the Division of Enforcement v. Illinois Racing Board, Biomedical Labs v. Trainer, which I think is quite relevant. Each of those stands for the proposition that once the board exceeds its authority, you have a right to go into circuit court and address that and get relief from the circuit court. But the trial court found that they have the right to do, to enter this disassociation against a sales agent. When that happens, isn't your chance over? I don't believe so, Your Honor, especially the way that this one was entered by saying no additional payments. It exceeded, it once again exceeded the authority, that action by the IGB, and it also prevented Excel from being able to comply with Rule 338 to make sure our clients were wound up appropriately. Any other questions, Your Honor? Thank you so much. Mr. Schmidt? Just a couple of points, Your Honor. First is to the point that's brought up about Rule 330A and that this would require a violation of it. We read that differently, and we've argued this in our reply brief. My understanding is that 330A would be geared more toward requiring a licensee at all times to be able to economically disassociate from persons with significant control if need be. In other words, it's not, it's something, the requirements are more like geared toward before the fact than after the fact. So this order, we don't think, is inconsistent with 330A. Can Excel come before the gaming board and say, wait, wait, I've got some problems here? Absolutely. Either Excel could have also sought review of this order before the gaming board. They did not do so, but they could have. Either the licensee or the sales agent is free to seek relief before the gaming board. And now that the sales agent has done this, and this is a little bit like an appeal or a cross-appeal, can Excel participate in the proceedings if it goes forward on administrative review? I'm a little uncertain. I would think the answer is yes, though, because they're a party. Yes, in fact, yes. I suppose they'll have to submit documents. They might not be a party, but they can participate. Your Honor, I believe Rule 330B even says they would be a party, that the licensee is a party. So yes, they should be able to participate. And I would also just point out, in regard to the enabling statute argument, that the enabling statute does, which is Section 78A of the Video Gaming Act, it gives the board very broad authority and it has the language stating that the board has all powers necessary and proper to fully and effectively execute the provisions of the act. And in enacting Rule 330, the gaming board, with its expertise, made a judgment that if the sales agents were a significant enough part of video gaming, that it would be possible that if there was some question as to the integrity and so forth of a sales agent, that the board should be able to economically order economic disassociation from that sales agent in the interests of video gaming and in the public interest. And we feel that that regulation is very much within the board's statutory authority. And it's important to allow the board to implement that rule. And with that, I'll just close by asking for reversal of the Circuit Court's order. Thank you for your time. Thank you. I thank the counsel for your argument. It has truly been informative. We will take the matter under advisement. A decision will be made in due course. And we will now stand adjourned for today. Thank you.